IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEONARDO JOBA PEREZ,

Petitioner,

v. No. 26-cv-2012 KG/JFR

TODD W. BLANCHE, *Attorney General of the United States, et al.*,

Respondents.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** is before the Court on the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Notice of Transfer of Jurisdiction ("Petition") filed by Petitioner Leonardo Joba Perez ("Petitioner") on June 23, 2026. Doc. 1. Respondents responded on July 8, 2026, Doc. 6, and Petitioner replied on July 20, 2026, Doc. 7. Having considered the briefing and relevant law, the undersigned recommends that the Petition (Doc. 1) be **DENIED WITHOUT PREJUDICE**.

## I. FACTUAL BACKGROUND

Petitioner, a forty-one-year-old Cuban national and native citizen, lawfully entered the United States ("U.S.") through the Miami International Airport—a designated Port of Entry—on May 11, 2024, pursuant to a prior grant of Cuban Parole under 8 U.S.C. § 1182(d)(5)(A), which was predetermined to expire June 12, 2025. *See* Doc. 6 at 1-2, 9-10. In May 2025, Petitioner

[1] By an Order of Reference Relating to Immigration Habeas Corpus Proceedings filed August 14, 2026, the presiding judge, United States Chief District Judge Kenneth J. Gonzales, referred this matter to the undersigned to conduct hearings and perform any legal analysis required to recommend an ultimate disposition of the case. Doc. 8; *accord* 28 U.S.C. §§ 636(b)(1)(B), (b)(3); *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990).

filed an Application to Register Permanent Residence (Form I-485). Doc. 1 at 2 ("May 2025"). *But see* Doc. 6 at 3 ("May 2024"). The application remains pending. Doc. 1 at 2; Doc. 6 at 3.

On January 31, 2026, as part of "SPM Metro Surge," Petitioner was arrested in St. Paul, Minnesota, pursuant to a Warrant for Arrest of Alien (Form I-200) (Doc. 6 at 12). *See* Doc. 6 at 3, 10. At an unspecified date before February 3, 2026, *see id.* at 13 (issuing document on February 3, 2026 in El Paso, Texas), Petitioner was transferred to Camp East Montana ("CEM") in El Paso, Texas "for processing due to lack of space." *Id.* at 10. On February 3, 2026, Petitioner was served with a Notice to Appear ("NTA") (Form I-862) (Doc. 6 at 13-16), alleging that he was inadmissible for not possessing a valid entry document under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). *See id.* at 16.

While at CEM, Petitioner had three immigration hearings, the last of which was on May 13, 2026. Doc. 1 at 2. Petitioner also filed formal grievances with CEM regarding the fact that his epilepsy medication was "routinely administered late — including late at night — and without food, contrary to medical requirements," which "caused physical discomfort and jeopardized Petitioner's neurological health." *Id.* at 3.

On May 6, 2026, Petitioner filed a Petition for Writ of Habeas Corpus in the United States District Court for the Western District of Texas in *Perez v. Department of Homeland Security*, No. 3:26-cv-01297, assigned to U.S. District Judge Leon Schydlower. On May 7, 2026, Judge Schydlower issued an Order for Service, ordering Respondents to respond. On May 14, 2026, the Department of Homeland Security ("DHS") responded to the petition. That same day, Petitioner was transferred to the Torrance County Detention Facility ("TCDF") in Estancia, New Mexico, Doc. 1 at 3, where he presently remains, *see id.* at 2. On June 5, 2026, in the Western District of Texas case, Petitioner filed a Notice of Change of Address.

On June 5, 2026, the Otero Immigration Court sent Petitioner a Notice of Internet-Based Hearing (Doc. 6 at 17-18), for an individual merit hearing on July 7, 2026. *See* Doc. 6 at 4, 17.

## II. PROCEDURAL BACKGROUND

On June 23, 2026, Petitioner filed the present Petition, Doc. 1, and attached: (1) a Medical Certificate issued by the Cuban Ministry of Public Health on February 18, 2026, listing Petitioner's diagnoses, *see id.* at 6-7; (2) an undated printout of Petitioner's "Most Recent I-94" search via the DHS "I-94/I-95 Website," *see id.* at 8; (3) an undated picture of an undated travel authorization document from DHS, *see id* at 9; and (4) an undated picture of the first page of Petitioner's undated Application to Register Permanent Residence (Form I-485), *see id.* at 10.

The Petition asserts claims for: (1) prolonged detention without an individualized bond hearing in violation of due process under the Fifth Amendment and *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) detention of a parolee with a pending and timely Application to Register Permanent Residence (Form I-485) being "unreasonable and unjustified"; (3) deliberate indifference to a serious medical need in violation of due process under the Fifth Amendment and *Estelle v. Gamble*, 429 U.S. 97 (1976); and (4) transferring Petitioner from CEM to TCDF, which "raise[s] serious due process concerns and may constitute an attempt to frustrate federal court review." *See* Doc. 1 at 3-4. For relief, Petitioner asks that the Court: (A) accept jurisdiction; (B) order either Petitioner's release, "with reasonable supervision conditions if deemed appropriate," or an "immediate individualized bond hearing" where Respondents bear the burden of proof; (C) order Respondents to timely and properly administer Petitioner's medication; (D) order preservation of all relevant records; (E) "[c]oordinate" with the Western District of Texas regarding *Perez v. Department of Homeland Security*, No. 3:26-cv-01297; and (F) "[g]rant such other and further relief as this Court deems just and proper." *See* Doc. 1 at 4.

On June 24, 2026, Judge Gonzales issued an Order to Answer. Doc. 4. Respondents filed their Response on July 8, 2026, Doc. 6, and attached: (1) Petitioner's Record of Deportable/Inadmissible Alien (Form I-213) as of February 3, 2026, *id.* at 9-11; (2) Petitioner's Warrant for Arrest of Alien (Form I-200), *id.* at 12; (3) Petitioner's NTA (Form I-862), *id.* at 13-16; and (4) the Notice of Internet-Based Hearing set for July 7, 2026, *id.* at 17-18. On July 20, 2026, Petitioner filed his Reply. Doc. 7.

On August 19, 2026, the undersigned issued an Order for Status Report. Doc. 9. Respondents filed a Status Report on August 25, 2026. Doc. 10. Thereto, Respondents attached the Order of the Immigration Judge ("Removal Order") (Doc. 10 at 3-6) issued July 16, 2026, which—after the Immigration Judge found Petitioner inadmissible under INA § 212(a)(7)(A)(i)(I) and denied asylum, withholding of removal under INA § 241(b)(3), and withholding or deferral of removal under the Convention Against Tortue, *see* Doc. 10 at 1—ordered Petitioner removed to Cuba, *id.* at 5. The Removal Order indicated that Petitioner reserved his right to appeal and listed "Appeal Due: 08/17/2026[.]" *See id.* at 6.

In the Status Report, Respondents explained that the Removal Order "likely became [administratively] final on August 18, 2026," but could not "affirmatively state that an appeal ha[d] not been filed," because the system used by the Office of the Principal Legal Advisor ("OPLA") "can take approximately ten days to log appeals." *Id.* at 1. Therefore, the undersigned issued an Order for Second Status Report on August 26, 2026.[2] Doc. 11.

On August 31, 2026, Respondents filed a Second Status Report. Doc. 12. Respondents explained that they followed up with OPLA "to confirm that an appeal still had not been filed by Petitioner," and "OPLA confirmed by email that an appeal has not been filed." *Id.* at 1. In

[2] The deadline to file the Second Status Report was August 31, 2026, Doc. 11, which is more than ten days from the Petitioner's deadline to appeal the Removal Order issued July 16, 2026, *see* Doc. 10 at 6 ("Appeal Due: 08/17/2026").

support, Respondents attached a printout of Petitioner's immigration case in the Executive Office for Immigration Review ("EOIR") Automated Case Information System. *See id.* at 3-5.

## III. LEGAL STANDARDS

### A. Writ of Habeas Corpus

28 U.S.C. § 2241(a) provides federal courts jurisdiction to grant a writ of habeas corpus to "release from unlawful physical confinement," *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973), a petitioner demonstrating "by a preponderance of the evidence," *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (per curiam), the existence of one of the five circumstances enumerated in § 2241(c). Relevant here, § 2241(c)(3) seeks release from federal custody that is "in violation of the Constitution or laws or treaties of the United States . . . ."

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the [U.S.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas*, 533 U.S. at 687; *Rasul v. Bush*, 542 U.S. 466, 483-84 (2004) ("[Noncitizen] Petitioners contend that they are being held in federal custody in violation of [U.S.] laws . . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004).

### B. Overview of Detention Under the INA

The INA, as codified in various sections of Title 8 of the U.S. Code and supplemented by various subsections of Title 8 of the Code of Federal Regulations, authorizes three basic forms of detention for noncitizens in removal proceedings. These "applicable statutes apply at different stages" of detention. *Cruz-Zavala v. Barr*, 445 F. Supp. 3d 571, 575 (N.D. Cal. 2020) (quotation marks and citation omitted). Moreover, where a noncitizen "falls within this statutory scheme

can affect whether his detention is mandatory or discretionary, as well as the kind of review process available . . . ." *Id.* (quotation marks and citation omitted).

Two INA provisions govern the detention of noncitizens pending removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018). First, § 1225 governs noncitizens detained while arriving or shortly after entry, who are treated as "seeking admission into the country." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Second, § 1226(a) is the "the default rule" for issuing warrants to detain noncitizens "already present" in the U.S. *Jennings*, 583 U.S. at 303.

Comparatively, § 1231 governs the detention of noncitizens during and beyond the ninety-day "removal period," during which the Attorney General is to remove the noncitizen. 8 U.S.C. § 1231(a)(1)(A). The removal period begins, and thus a noncitizen becomes subject to detention under § 1231, on the latest of three events:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(A).

"During the 90-day removal period, . . . [noncitizens] must be held in custody." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)). After that, the Government may continue detaining the noncitizen only for as long as is "reasonably necessary" to secure their removal. *Id.* at 682. Because a statute permitting a noncitizen's "indefinite detention" would violate due process, *id.* at 690, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized," *id.* at 699. A six-month detention period is presumptively

reasonable. *Id.* at 701. After six-months have passed from the start of the removal period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing" of unconstitutional detention. *Id.*

## IV. ANALYSIS

Petitioner was ordered removed on July 16, 2026. *See* Doc. 10 at 5. Because Petitioner did not appeal the Removal Order (Doc. 10 at 3-6) by the deadline of August 17, 2026, *see id.* at 6, it became administratively final on August 18, 2026. *See* 8 U.S.C. § 1101(a)(47)(B)(ii) (an order of removal becomes final upon expiration of the time to appeal). Because Petitioner's Removal Order became administratively final under 8 U.S.C. § 1101(a)(47)(B)(ii), that initiated the ninety-day removal period under 8 U.S.C. § 1231(a)(1)(B)(i).

Although Petitioner has been detained since January 31, 2026, Doc. 10 at 2, the relevant period for purposes of § 1231(a) is measured from when the removal period began. *See Zadvydas*, 533 U.S. at 701. Since, Petitioner's Removal Order became administratively final on August 18, 2026, he has been detained pursuant to § 1231(a) for approximately two weeks. Accordingly, Petitioner's detention remains within the ninety-day period of mandatory detention under § 1231(a)(2)(A), as well as the presumptively reasonable six-month period under *Zadvydas*. 533 U.S. at 701.

Therefore, Petitioner is not presently entitled to release. *See*, e.g. *Ambrocio-Vasquez v. Mullin*, No. 26-cv-02465, 2026 WL 2390608, at *1 (D.N.M. Aug. 17, 2026) (Gonzales, C.J.); *Moreno De Armas v. Mullin*, No. 26-CV-02090, 2026 WL 2176975, at *1 (D.N.M. July 28, 2026) (Gonzales, C.J.); *Salcedo v. Mullin*, No. 26-cv-01774, 2026 WL 1830990, at *2 (D.N.M. June 25, 2026) (Gonzales, C.J.).

## V. RECOMMENDATIONS

For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition (Doc. 1) be **DENIED WITHOUT PREJUDICE**.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**