**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LEONARDO JOBA PEREZ,

Petitioner,

v. No. 1:26-cv-02012-KG-JFR

TODD W. BLANCHE, *Attorney General of the United States, et al.*,

Respondents.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Magistrate Judge Robbenhaar's Proposed Findings and Recommended Disposition ("PFRD"), filed on September 1, 2026. Doc. 13. The PFRD notified the parties of their ability to file objections within fourteen days, and that failure to do so waived appellate review. *Id*. at 8. Petitioner, appearing pro se, filed timely objections on September 14, 2026 ("Petitioner's Objections"). Doc. 15. The Government did not file any objections. Petitioner has also filed a Supplemental Notice of Medical Records and Request for Expedited Release ("Request for Expedited Release"). Doc. 14. That Motion is also before the Court.

Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted a de novo review of the record, including all parts of the Magistrate Judge Robbenhaar's PFRD to which Petitioner properly objects. For the reasons below, the Court sustains Petitioner's Objections to the PFRD and grants the Petition. The Court denies Petitioner's Request for Expedited Release.

***I. Background***

Petitioner Leonardo Joba Perez, a native citizen and national of Cuba, lawfully entered the United States through Miami International Airport—a designated port of entry—on May 11, 2024, pursuant to a prior grant of humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). Doc. 6 at 1. Petitioner's term of parole was valid for one year and expired on June 12, 2025. Doc. 1 at 8; Doc. 6

at 3. On January 31, 2026, Petitioner was arrested in St. Paul, Minnesota and served with a Notice to Appear, alleging he was inadmissible because he did not possess a valid entry document under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). Doc. 6 at 3, 10, 16. Petitioner remains in immigration custody and is currently detained at the Torrance County Detention Facility in Estancia, New Mexico. *Id.* at 1, 3.

On June 23, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus seeking immediate release or, in the alternative, an individualized bond hearing. *Id.* at 4. The Court referred the matter to Magistrate Judge Robbenhaar to recommend an ultimate disposition of the case. *See* Doc. 8. On August 25, 2026, the Government filed a Status Report and attached a copy of the order of removal ("Removal Order") issued by the Immigration Judge ("IJ") on July 16, 2026. *See* Doc. 10. The Removal Order indicated that Petitioner had reserved his right to appeal and that any appeal was due on August 17, 23026. *Id.* at 6 ("Appeal Due: 8/17/2026"). In the Status Report, the Government also stated the Removal Order "likely became [administratively] final on August 18, 2026," but emphasized that it could not definitively determine the status of any appeal because the system "can take approximately ten days to log appeals." *Id.* at 1. On August 31, 2026, the Government filed a Second Status Report, which stated that "[DHS] confirmed by email that an appeal has not been filed[.]" Doc. 12 at 1. The Second Status Report also included a printout of Petitioner's immigration case in the Executive Office for Immigration Review ("EOIR") Automated Case Information System. *Id.* at 3–5.

Based on these facts, Magistrate Judge Robbenhaar proposed the following findings and recommendations: (1) Petitioner's Removal Order became administratively final on August 18, 2026; (2) Petitioner had been detained under 8 U.S.C. § 1231 for approximately two weeks since the Removal Order became administratively final; (3) "Petitioner's detention remains within the ninety-day period of mandatory detention under § 1231(a)(2)(A), as well as the presumptively

reasonable six-month period;" and (4) the Petition should be denied without prejudice. Doc. 15 at 7–8.

Petitioner filed timely objections to the PFRD on September 14, 2026.[1] *See* Doc. 15 at 5–21. Petitioner specifically objects to the finding that his order of removal became administratively final on August 18, 2026. In support of this claim, Petitioner attached a copy of his Notice of Appeal (Form EOIR-26), which is stamped received by the BIA on August 17, 2026. *Id.* at 12–25. Although Petitioner concedes "this evidence was not before the Magistrate Judge at the time the PFRD was entered on September 1, 2026," he nonetheless asks this Court to consider it as "further evidence" pursuant to Fed R. Civ. P. 72(b)(3). *Id.* at 5–6. The Government did not file any objections.

## *II. Standard of Review*

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement[.]" *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). Habeas corpus review is available if a noncitizen is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

The Immigration and Nationality Act ("INA") and its implementing regulations establish distinct detention regimes. The detention of noncitizens pending removal proceedings is governed by two different INA provisions. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). First, § 1225 governs noncitizens detained at a port of entry or shortly after entry, who are treated as

[1] Petitioner's filing is titled Notice of Filing Proof of Timely BIA Appeal in Response to the Court's Order for Second Status Report. Because this document contains specific objections to the PFRD, *see* Doc. 15 at 5–21, the Court construes the filing as Petitioner's Objections to the PFRD. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally[.]").

noncitizens "seeking admission into the country." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). With few exceptions, § 1225 "mandates detention and affords no bond hearing." *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-01031-KG-JFR, 2025 WL 3187432, at *1 (D.N.M. Nov. 14, 2025).

Second, § 1226(a) governs the detention of noncitizens who are "seeking admission" to the United States. Under this statute, the detention of a noncitizen without a bond hearing violates their right to due process under the Fifth Amendment of the United States Constitution. *See Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026) (holding that "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)").

Once a noncitizen is subject to final order of removal, their detention is governed by § 1231. A removal order becomes administratively final upon the earlier of the noncitizen's waiver of the right to appeal, or the expiration of the time to appeal if no appeal is filed. 8 C.F.R. § 1241.1(a)-(c). "[T]he Government ordinarily secures [a noncitizen]'s removal during" the 90 days after a removal order becomes administratively final. *Zadvydas*, 533 U.S. at 682; *see* 8 U.S.C. § 1231(a)(1). During the 90-day "removal period," the noncitizen is typically detained. *Zadvydas*, 533 U.S. at 682. After that, the Government may detain the noncitizen for as long as is "reasonably necessary" to secure their removal. *Id.*; 8 U.S.C. § 1231(a)(6).

## ***III. Analysis***

The Court: (1) sustains Petitioner's Objections to the PFRD; (2) concludes that § 1225(b) governs Petitioner's detention; and (3) orders the Government to provide Petitioner with an individualized bond hearing.

A. Petitioner's Removal Order is not administratively final.

As a factual matter, the Court first finds that Petitioner's Removal Order is not administratively final. Here, the PFRD found that Petitioner's Removal Order was administratively final based on the Government's understanding that "an appeal has not been filed[.]" Doc. 4 at 4; *see also* Doc. 12 at 1. But the Notice of Appeal attached to Petitioner's Objections—evidence that was not before Magistrate Judge Robbenhaar at the time the PFRD was entered—compels a different conclusion. *See* Doc. 15 at 12–25. This Notice of Appeal was also timely filed because it is stamped as received by the BIA on August 17, 2026—the same day that Petitioner's appeal was due. *Id.* The Court therefore finds that Petitioner's Removal Order is not administratively final and further concludes that Petitioner's detention is not governed by § 1231.

B. Petitioner is subject to detention under § 1225(b).

The Court next determines that Petitioner's detention is governed by § 1225(b). Parole does not constitute an admission into the United States. *See* § 1182(d)(5)(A) ("[P]arole . . . shall not be regarded as an admission of the [noncitizen] and . . . [after parole terminates] his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."); 8 C.F.R. § 1.2. Thus, "[a]n alien detained under [§ 1225(b)] who is released from detention pursuant to a grant of parole under [§ 1182(d)(5)(A)], and whose grant of parole is subsequently terminated, is returned to custody under [§ 1225(b)] pending the completion of removal proceedings." *Rincon v. Hyde*, 810 F. Supp. 3d 101, 109 (D. Mass. 2025) (quoting *Matter of Q. Li*, 29 I. & N. Dec. 66, 70 (BIA 2025)).

Here, Petitioner was paroled into the country for one year, until June 12, 2025. Doc. 1 at 8 (I-94); Doc. 15 at 22–29 (Removal Order stating that Petitioner was found inadmissible under Section 212(a)(7)(A)(i)(I) of the INA). When his parole automatically terminated, Petitioner's

status therefore reverted to that of an applicant for admission and he became subject to the detention provisions of § 1225(b).

C. The Due Process Clause Applies

Although Petitioner is subject to detention under § 1225(b), Petitioner also asserts that his continued detention violates the Due Process Clause because he has acquired a protected liberty interest. Doc. 1 at 3–4. The Court agrees. Courts analyze due process claims in two steps. First, they evaluate whether a protected liberty interest exists, and second, whether the procedures used to deprive that interest satisfy due process. *Domingo v. Castro*, 806 F. Supp. 3d 1246, 1252 (D.N.M. 2025).

1. Petitioner has a cognizable liberty interest.

It is well-settled that the Due Process Clause grants protection to "all persons within the territory of the United States." *Wong Wing v. United States*, 163 U.S. 228, 238 (1896). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Protection under the Due Process Clause extends to noncitizens "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. The Supreme Court has recognized that a noncitizen physically present in the United States may acquire a cognizable liberty interest through "substantial connections" here. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (holding that noncitizens have a "weighty" interest in their right "to stay and live and work in this land of freedom" and to "rejoin . . . immediate family").

Under these principles, Petitioner has established a protected liberty interest by residing in the United States prior to his detention. *See* Doc. 1 at 2. His detention has severed those ties and

deprived him of the liberty interest protected by the Due Process Clause. *See Zadvydas*, 533 U.S. at 718 (Kennedy, J., dissenting).

2. Under the Due Process Clause, a bond hearing is warranted.

Because the Due Process Clause affords Petitioner a protected liberty interest, the Court next determines what process is due. In the immigration context, courts apply the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See*, *e.g.*, *Landon*, 459 U.S. at 34; *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990). Under *Mathews*, the Court balances (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures. 424 U.S. at 335.

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after living outside of physical custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvyda*s, 533 U.S. at 690. As mentioned above, Petitioner was free from physical custody before he was re-detained. His private interest in freedom from arbitrary or unlawful physical custody is substantial.

The second *Mathews* factor also favors Petitioner. The risk of erroneous deprivation is high because mandatory detention does not adequately protect his interest in freedom from arbitrary physical restraint. Detention must "bear[ ] a reasonable relation to the purpose[s] for which the individual was committed." *Id.* at 690–91 (internal quotation marks omitted) (construing 8 U.S.C. § 1231 to avoid the constitutional concerns raised by indefinite detention). Yet § 1225(b) provides no mechanism for determining whether detention is justified in light of Petitioner's individual circumstances. On the other hand, Petitioner is subject to mandatory detention under the statute.

*See* Doc. 1 at 8; Doc. 15 at 22–29. Therefore, "the equities tip in favor of a bond hearing, rather than release, where the Petitioner still bears the burden of showing why release on bond is warranted in this case." *Mendibaev v. Lyons*, No. 1:25-cv-01308-DHU-GBW, 2026 WL 917457, at *7 (D.N.M. Apr. 4, 2026). This ensures Petitioner "is not erroneously deprived of his liberty interest in release" while "recognizing that detention is mandated by the statute." *Id.*

Finally, the third *Mathews* factor favors Petitioner. While the Government has a strong interest in enforcing its immigration laws, its interest in detaining noncitizens absent an individualized justification for doing so is low. *Id.* The Government previously determined that Petitioner could pursue his immigration case while at liberty, and it has identified no material change in circumstances that would justify a different conclusion today. The Court recognizes that providing Petitioner a bond hearing necessarily entails an "administrative burden[]." *See Mathews*, 424 U.S. at 335. But "[c]ourts generally have found that the cost of providing a bond hearing is relatively minimal." *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, 2025 WL 1158841, at *9 (E.D. Cal.) (citing cases). And because Petitioner's removal proceedings will continue regardless of his detention status, a bond hearing does not interfere with the Government's "sovereign prerogative" to decide which noncitizens to admit. *Landon*, 459 U.S. at 32. Nor does this Order affect the Government's authority to detain Petitioner after a final order of removal issues. *See* 8 U.S.C. § 1231(a). In sum, all three *Mathews* factors weigh in favor of Petitioner, and he is therefore entitled to an individualized bond hearing.

## ***IV. Conclusion***

For the reasons above, the Court sustains Petitioner's Objections to the PFRD, Doc. 13, and grants the Petition, Doc. 1. The Court denies Petitioner's Request for Expedited Release, Doc. 14. The Court orders:

1. Within fourteen (14) days of this Order, the Government shall provide Petitioner with an individualized bond hearing before an immigration judge.
2. At the hearing, Petitioner bears the burden of proving by a preponderance of the evidence that conditions of release would adequately address any risk of flight or danger to the community.
3. If a bond hearing is not provided within fourteen (14) days, Petitioner shall be released under the same conditions that governed his release immediately prior to detention.
4. Within twenty-one (21) days of this Order, the Government shall file a Status Report with the Court to certify its compliance.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales____________________
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.